## W. E. GENTRY ET AL. v. W. L. GATLIN.

### Delivered October 24, 1896.

**1.  Contract—Delivery in Escrow.**

Defendants contracted to lease pastures to plaintiff provided that the latter should execute notes for the rent, and that defendants should give bond to secure plaintiff against damages to cattle grazing on the pastures, and such contract was delivered in escrow to be held until the bond and notes were furnished to the holder for delivery to the parties.  Plaintiff executed and delivered the notes, but defendants failed to execute the bond.  Held, that the contract was never completed.

**2.  Pleading—Written Instrument—Non Est Factum.**

Plaintiff sued for the breach of a contract, alleging as to its execution only that defendants "did undertake, contract, agree and promise to let and lease to plaintiff two certain pastures," and did "by said agreement and contract become bound to furnish" grass and water, etc., but without referring in any manner to a written contract or making it an exhibit.  Held, that this was not an action upon a written contract, such as precluded defendant from raising the question of delivery of the written contract produced in evidence because no plea of non est factum under oath had been filed.

APPEAL from Taylor.  Tried below before Hon. T. H. CONNER.

*D. G. Hill* and *Hutchings & English*, for appellants.

*Cockrell & Hardwicke*, for appellee.

HUNTER, ASSOCIATE JUSTICE.—The appellee (plaintiff below) in his petition declared as follows:  "That heretofore, on or about the 15th day of February, 1894, the said firm of N. P. Murphy, for a valuable consideration, did undertake, contract, agree and promise to let and lease to plaintiff two certain pastures, and the firm of N. P. Murphy did in and by said agreement and contract promise and become bound to furnish to and for plaintiff plenty of grass and water to fatten three thousand grown cattle from April 1, 1894, to November 1, 1894, and in case the said two pastures did not afford plenty of water and grass, said N. P. Murphy, as a firm, was to furnish the same at its expense free from any expense to said Gatlin.  Wherefore and whereby said firm of N. P. Murphy became liable and bound to furnish said pastures and pasturage sufficient to fatten 3000 grown cattle as aforesaid."

Then follows a similar allegation on another contract made by the same parties on the same day, whereby the same firm agreed to furnish pasturage sufficient to fatten 1500 grown cattle, adjoining the two pastures mentioned in the first contract, or elsewhere if not to be obtained adjoining said pastures; that defendants failed to furnish such pastures or pasturage, or any part thereof, to plaintiff's damage $2700.

Defendants plead a general denial, and specially that the pastures were located in the Creek Nation of the Indian Territory, and that such contracts were prohibited by the laws of such nation.

The case was tried without a jury, and the court rendered judgment for the plaintiff below in the sum of $600.  No conclusions of fact and

of law were filed by the court, but the case comes here on a statement of facts.

To sustain the allegations of the petition, the plaintiff (appellee) introduced two written contracts, each bearing date "Indian Nation, February 15, 1894," which sustain the allegations in the petition as to the agreement to lease the pastures, but each contract contains two further stipulations; one to the effect that appellee will execute his notes payable at certain times named, in payment for the pastures; and the other to the effect that appellants (defendants) "are to give W. L. Gatlin * * * a good and sufficient bond to secure said Gatlin against the damages that may accrue to his cattle by the authorities of the Creek Nation or any citizens of said Creek Nation in any way, and should any damage arise or accrue by the authorities of said Creek Nation or any of its citizens, then the amount so damaged is to be due and payable to said W. L. Gatlin at the time of such damage at Muskogee, Creek Nation."

The first assignment of error is as follows: "The court erred in rendering judgment against defendants Gentry & Murphy and the firm of N. P. Murphy, because the uncontroverted evidence shows: 1st, That the two written contracts sued on were made between plaintiff Gatlin and defendant N. P. Murphy on the 15th of February, 1894, and placed in the hands of one Polk. 2nd, That said Polk was to hold the two contracts until defendant Murphy made and executed a bond of $5000, and plaintiff Gatlin executed the notes mentioned in the contracts, which were to be delivered to said Polk. 3rd, That after the $5000 bond and notes were made and executed by Murphy and Gatlin, Murphy was to have a copy of each of the contracts and the notes. 4th, Murphy never made and delivered the bond, but Gatlin made the notes. 5th, The two contracts were never delivered by Polk to Gatlin, nor did Polk ever deliver the notes to said Murphy; that said contracts were held in escrow by said Polk."

The appellee Gatlin testified: "When we made the contracts it was agreed between Murphy and myself that they were to be placed in the hands of one Polk, to be by him held until N. P. Murphy made me a good bond for $5000, as provided for in contract and to protect me from any damage I might sustain by reason of the Light Horse or any other persons in the Territory in cutting fences, turning out and killing cattle, etc. I have been pasturing cattle in said Territory for about two years. I had heard of parties having trouble with those people up there about their stock and pastures. When I made the notes provided for in said contracts, and Murphy made the $5000 bond, I was to have the contracts and Murphy was to have a copy of each of the contracts before Polk turned them over to me. I was to have the bond. Some time before this suit was instituted" [suit was filed March 11, 1895] "I executed notes and sent them to Polk. I saw Murphy at the cattle convention at Fort Worth in March, 1894. Murphy there told me that he could not make the bond mentioned in contracts. We

talked about the matter some.  He failed to make the bond.  As the cowboys say, 'He laid down on me.'  *  *  *  I did not tell Murphy in the presence of defendant Middleton if the defendant could not make the bond, I would not have the pastures.  Murphy never offered me the pastures mentioned in the contracts, if I would take them without the bond.  *  *  *  I never offered or tendered the 4000 head of cattle I shipped to the Territory, or any other cattle, to Murphy or Gentry to pasture under the contracts or any other contract.  I shipped said 4000 head to Territory some time in April, 1894.  The shipment was made by me after Murphy told me at Fort Worth convention in March, 1894, he could not make the bond.  I knew at the time I made the contracts with Murphy that there was known as the border or illegal pastures, and that the Light Horse and other parties sometimes depredated on cattle in those pastures known as illegal pastures.  I wanted the bond to protect me against damages."

The two pastures referred to in the contract first mentioned were what is known as illegal pastures, but the one mentioned second was a border or legal pasture, such as, it is insisted, might be leased under Indian law; and the $600 damages allowed by the District Court was evidently for breach of the contract in failing to furnish this pasture to the appellee.

N. P. Murphy testified that the contracts were signed and placed in the hands of Polk and were to be held by him until he delivered to him the bond of $5000 mentioned in the contract, and Gatlin was to execute the notes mentioned in the contracts.  He then says:  "I could not make the bond.  I tried to make the bond.  I saw Gatlin at the Fort Worth convention.  I there told him I could not make the bond, and he said if I did not make the bond he would not have the lease.  I offered him the pastures if he would take them without the bond  *  *  *.  Before the contracts were to be delivered to Gatlin, I was to have one of each and the notes specified in the contracts.  I never received any copies or notes on these contracts.  I never talked with Gatlin any more after we had the conversation at the convention at Fort Worth.  He never offered me any cattle to pasture under the contracts or in any other way mentioned the matter to me."  He says after Gatlin told him he would not have the lease unless the bond was given, he leased the two illegal pastures to D. H. Middleton, for $2000, who required no bond of him; that Middleton was present and heard Gatlin say he did not want the lease unless the bond was given.

Middleton testified:  "I heard Murphy tell Gatlin that he could not make the bond, and my recollection is that Gatlin said that if he did not get the bond he would not have the pastures.  I understood from their conversation that the trade was off."

Gatlin denies that he told Murphy that unless he made the bond he would not have the pastures.

Upon this evidence, which is all there is on the subject, we are clearly of opinion that the contracts to lease were never completed,

because of the failure on Murphy's part to execute the bond and deliver it to Polk, and that Polk had no power or authority to deliver the contracts to Gatlin until the bond had been delivered to him by Murphy.

It is insisted by appellee that appellant cannot raise the question of delivery of the contracts, because no plea of non est factum under oath was filed in the court below.

Our statute, article 1265, provides that an answer setting up "a denial of the execution by himself, or by his authority, of any instrument in writing upon which any pleading is founded in whole or in part, and charged to have been executed by him or by his authority and not alleged to be lost or destroyed," shall be verified by affidavit, unless the truth of the pleadings appears of record.

Delivery is part of the execution of a written contract, and without delivery no written agreement can take effect. If the appellee had declared upon the written instruments, his insistence would be good. Grounds v. Sloan, 73 Texas, 665.

But he does not sue upon the written contracts, nor does he allege that the contracts were executed by appellants. His allegation is that the appellees "did undertake, contract, agree and promise to let and lease to plaintiff two certain pastures, and the firm of N. P. Murphy did in and by said agreement and contract promise and become bound to furnish," etc. It is nowhere alleged in substance that appellants "made, executed and delivered their certain contracts in writing," nor are the contracts in any manner referred to or made exhibits to the pleading; and we are therefore clearly of opinion that the appellee's pleading is not founded on the instruments in writing, but oral evidence of the contracts, until it appeared that they were in writing, would have been admissible in evidence under the allegations of the petition. The petition seems to have been carefully drawn with a view of introducing oral testimony of the agreements, if the written evidence should be objected to on the trial and be excluded by the court.

We are therefore of opinion that the undisputed evidence in this case shows that the contracts to lease the pastures in question were never completed, for want of the execution of the $5000 bond and afterwards delivery of the contracts, and that consequently the judgment of the court is wholly unsupported by the evidence; and we therefore reverse the judgment in this cause and here render judgment in favor of appellant that W. L. Gatlin take nothing by this suit, and that N. P. Murphy and W. E. Gentry, and the firm of N. P. Murphy, go hence without day and recover all their costs in this court, as well as in the District Court, by them incurred and expended.

*Reversed and rendered.*